IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL R. WHITE,<br><br>        Plaintiff,<br><br>v.<br><br>BAYHEALTH MEDICAL CENTER, INC.,<br><br>        Defendant. | Civil Action No. 22-1518-RGA |

## MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

January 29, 2024

1



**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's Motion to Dismiss. (D.I. 17). I have considered the parties' briefing. (D.I. 18, 19, 21). I heard oral argument on January 4, 2024 on a group of cases, including the present action, involving religious discrimination claims with regards to Defendant's COVID-19 vaccine policy. For the reasons set forth below, this motion is DENIED in part and DISMISSED as moot in part.

## I. BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to respond to government vaccination policy. The First Amended Complaint (D.I. 9) is the operative complaint and alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare & Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care facilities, including Defendant, to ensure their staff members were all either vaccinated against COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption requests were required to submit forms explaining the religious beliefs that formed their basis of their objection to the COVID-19 vaccine. (*See* D.I. 9-1, Ex. A). Employees could attach additional materials, such as letters from religious leaders, to support their exemption request. (*Id.*).

Employees who had their religious exemption requests rejected, and continued to refuse the COVID-19 vaccine, were set to be terminated on February 28, 2022. Plaintiff was one of

these employees. On February 2, 2022, Plaintiff was suspended from his position. On February 8, 2022, an attorney representing Plaintiff wrote to counsel for Defendant asking for reconsideration of Defendant's planned termination of Plaintiff's employment. On that same day, Defendant terminated Plaintiff's employment for allegedly interfering in an internal investigation.

Plaintiff subsequently filed the present suit raising religious discrimination and retaliation claims against Defendant under Title VII. *See* 42 U.S.C. § 2000e. Defendant moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (D.I. 17).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the

complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1)

"sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. Of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[1] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

---

[1] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 9 ¶ 13).

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

## C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. Of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

## D. Retaliation

"To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action.'" *Moore v. City of*

*Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995)). A plaintiff can demonstrate a causal connection by showing (1) "a pattern of antagonism;" (2) "temporal proximity 'unusually suggestive of retaliatory motive';" or (3) "the proffered evidence, looked at as a whole." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017).

### III. DISCUSSION

#### A. Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled that the belief upon which his objection to receiving the COVID-19 vaccine was based is a religious belief. "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts regarding the nature of his belief system, as well as facts connecting his objection to that belief system." *Aliano*, 2023 WL 4398493, at *5. "In other words, [he] must demonstrate that [his] objection arises from a subjective belief that is tied to [his] belief system which meets the *Africa* factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that the plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023); *Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should "provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs are related to [their] faith, and

8

how those beliefs form the basis of [their] objection to the COVID-19 vaccination."). Defendant argues that Plaintiff's objection to the vaccine stems from Plaintiff's personal moral code rather than from his religious beliefs.[2] (D.I. 18 at 8–16; D.I. 21 at 5–8).

Plaintiff's exemption form asserts his "religious objection to the COVID-19 vaccines is that the human embryonic cells have been utilized in developmental procedures for Pfizer, Moderna, and J&J vaccines according to the Lozier Institute of [R]esearch and Biorxiv.org." (D.I. 9-1, Ex. A, at 3 of 5). He explains his belief that "life begins at conception" and that he "do[es] not support any practices, ideology, societal constructs, or reasons of abortion." (*Id.*). Plaintiff summarizes his views by stating, "Vaccines that may use aborted fetuses in research displays a profound disrespect and horrible distain for life at conception according to the Will of God." (*Id.* at 3). Plaintiff, a Baptist, quotes several Bible verses which he interprets to support this condemnation of abortion. (D.I. 9 ¶ 13; *see, e.g.*, D.I. 9-1, Ex. A, at 3–4 of 5 (citing Psalm 139:13–16 ("For you created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well. My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be."))).

Plaintiff's letter "provides sufficient allegations regarding his subjective personal beliefs, how those beliefs are related to his faith, and how those beliefs form the basis of his objection to

---

[2] Defendant does not challenge Plaintiff's assertion that his Baptist faith meets the *Africa* test. Rather, Defendant argues the beliefs on which Plaintiff's objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as opposed to religious beliefs that form a part of Plaintiff's Baptist faith. (*See* D.I. 18 at 8–16; D.I. 21 at 5–8). I therefore address only the questions at issue: whether Plaintiff has sufficiently connected his objection to the vaccine to a religious belief tied to his Baptist faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

the COVID-19 vaccination." *Ellison*, 2023 WL 6038016, at *6. I find that Plaintiff has adequately linked his objection to the COVID-19 vaccines to religious beliefs stemming from Plaintiff's Baptist faith. Other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have found that religious beliefs condemning abortion and murder, when adequately pled, are sufficient to survive at the motion to dismiss stage. *See, e.g.*, *Ellison*, 2023 WL 6038016, at *6–7; *Kather v. Asante Health Sys.*, 2023 WL 4865533, at *4 (D. Or. July 28, 2023); *Aliano*, 2023 WL 4398493, at *7, *9–11; *cf. Winans v. Cox Auto., Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023) ("The Complaint does not even identify why Plaintiff objects to the use of fetal cell lines in the development of the COVID-19 vaccine; it merely asserts that fetal cell lines were, in fact, used by vaccine developers.").

For the reasons stated above, I find Plaintiff's Complaint plausibly alleges that he had a "sincerely held religious belief, and that [his] objection to receiving the COVID-19 vaccine was based on that belief." *Aliano*, 2023 WL 4398493, at *4.

I note that Plaintiff's Complaint and exemption form express other beliefs, in support of his objection to the COVID-19 vaccine, which he argues are also religious in nature. (*See* D.I. 9 ¶ 20; D.I. 9-1, Ex. A, at 3–4 of 5; D.I. 18 at 3; D.I. 23 at 5–6). "The complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" *Sweda v. Univ. of Pa.*, 923 F.3d 320, 331 (3d Cir. 2019). "[My] obligation is not to read each allegation in isolation nor to nitpick a complaint line by line, paragraph by paragraph." *In re Auto. Parts Antitrust Litig.*, 2014 WL 4272784, at *6 (E.D. Mich. Aug. 29, 2014). Rather, I consider the "well-pleaded factual allegations" using a "holistic approach." *Sweda*, 923 F.3d at 331. Plaintiff has plausibly stated a failure to accommodate claim based on at least one religious belief. I need

not address whether Plaintiff's other asserted beliefs might independently qualify as religious beliefs.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to adequately plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 18 at 21). Plaintiff claims he has not pled disparate treatment. (D.I. 19 at 17). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 21 at 9 n. 27). Nevertheless, since Plaintiff states he is not now pleading disparate treatment, I accept that he is not, and I will dismiss Defendant's argument as moot.

### C. Retaliation

Defendant argues that Plaintiff has failed to adequately plead two elements of his prima facie case on retaliation: (1) that Plaintiff was engaged in a protected activity and (2) that a causal connection existed between a protected activity and an adverse employment action. (D.I. 18 at 16–20). Plaintiff maintains the submissions of Plaintiff's vaccine exemption form on November 17, 2021 and Plaintiff's attorney letter on February 8, 2022 both constituted protected activities. (D.I. 19 at 19–20). Plaintiff identifies his termination on February 8, 2022 as the adverse employment action. (*Id.* at 20).

I agree with Defendant that Plaintiff fails to allege sufficient facts to show a causal connection between Plaintiff's religious accommodation request and Plaintiff's termination. Plaintiff relies on the "close temporal proximity [between Defendant's] denial of Plaintiff's request for a religious exemption to Plaintiff's termination" to establish causal connection. (D.I. 19 at 20). As Defendant points out, this is a period of eleven to twelve weeks. (D.I. 21 at 10). This length of time alone is not "unusually suggestive of retaliatory motive." *See Williams v.*

11

*Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760–61 (3d Cir.2004) (finding a two-month lapse between the protected activity and the adverse employment action to be insufficient to establish causal connection); *Conklin v. Warrington Twp.*, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009) ("[T]emporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence."); *Lorah v. Tetra Tech, Inc.*, 541 F. Supp. 2d 629, 636 (D. Del. 2008) ("To be 'unusually suggestive' of retaliatory motive, the temporal proximity must be immediate.").

In contrast, Plaintiff was fired the same day that his attorney sent a letter to Defendant's counsel. This degree of immediacy is certainly enough to satisfy Plaintiff's burden of showing causal connection at the motion to dismiss stage. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding, at the summary judgment stage, the requisite causal link when the adverse employment action occurred two days after the protected activity). Defendant argues that Plaintiff was already suspended prior to Bayhealth's receipt of the attorney letter. (D.I. 18 at 20). Defendant also argues that it had no incentive to retaliate as it planned to terminate Plaintiff in a few weeks anyway. (*Id.* at 21). While these assertions may play a role in analyzing Defendant's non-retaliatory motive, they are irrelevant to whether Plaintiff has adequately plead his prima facie case. Plaintiff is not alleging the suspension as the adverse employment action taken. Reading the factual allegations "in the light most favorable to the complainant," Plaintiff's termination on February 8, 2022 is not necessarily tied to his earlier suspension. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). I find Plaintiff's Amended Complaint plausibly alleges facts that show a causal connection between the attorney letter and Plaintiff's termination.

I also find Plaintiff has plausibly alleged that the sending of Plaintiff's attorney letter, which requested reconsideration of the denial of Plaintiff's exemption status, is a protected

activity. Defendant's opening brief contends the attorney letter fails "to communicate any allegations of illegality."³ (*Id.* at 19 (citing *Gardner v. Del. Dep't of Health & Soc. Servs.*, 159 F. Supp. 3d 473, 477 (D. Del. 2016); *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 262 F. Supp. 3d 863, 865–67 (D. Minn. 2017), *aff'd*, 908 F.3d 1098 (8th Cir. 2018))). Plaintiff argues the "clear indication was that Plaintiff would consider legal action under Title VII if Defendant did not rescind the denial." (D.I. 19 at 20). I agree that Plaintiff's attorney letter can be inferred to convey a forthcoming legal challenge to the religious exemption decision. I therefore decline to dismiss Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 17) is DENIED in part and DISMISSED as moot in part.

An appropriate order will issue.

---

³ Assuming Defendant's cited cases stand for the proposition asserted, it is unclear whether this requirement exists (as demonstrated by Defendant's lack of citation to any Third Circuit authority). Plaintiff does not respond to this argument in his brief. For the purposes of this motion, I assume Defendant accurately characterizes the law.

13